**FILED**
**FEBRUARY 1, 2021**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 37143-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| MARTINIANO ELUTERIO CAMACHO, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Martiniano Camacho appeals his conviction and

sentence for second degree assault. He argues his oral waiver of his right to a jury trial

was insufficient because it was not knowing or intelligent. He also argues the trial court

abused its discretion by failing to meaningfully consider his request for an exceptional

sentence downward. We disagree and affirm.

FACTS

The State charged Martiniano Camacho with second degree assault and alleged a

deadly weapon enhancement. Judge Bruce Spanner presided over Camacho's

arraignment and fully advised Camacho of his various constitutional rights, including his

right to a jury trial. The court asked Camacho if he had any questions about these rights,

and Camacho responded that he did. Rather than asking questions about his constitutional rights, he asked how he might obtain video of the purported assault that occurred outside a gas station. The court advised Camacho against talking about the case and asked him again if he had any question about his constitutional rights. Camacho responded that he had a right to the video. The court then stated it had asked Camacho if he had questions about his constitutional rights and he wanted to discuss something else.

At a pretrial hearing presided over by Judge Samuel Swanberg, Camacho asked to represent himself. Camacho explained that he had been diagnosed with attention deficit disorder, was currently taking medication for his condition, and assured the court that his condition was under control. He also explained that he had previously been found competent. Judge Swanberg addressed the appropriate litany of concerns before ruling on Camacho's request, including asking Camacho what experience he had in the justice system. Camacho responded that he had been involved in the justice system since he was 13 years old. Judge Swanberg found that Camacho's waiver of his right to an attorney was knowing, intelligent, and voluntary. This finding is not contested.

At the same pretrial hearing, Camacho also asked to waive his right to a jury trial. Judge Swanberg asked whether a form was available and continued the hearing so the form could be completed and presented.

2

Judge Cameron Mitchell presided over the continued pretrial hearing. The parties discussed various issues, including Camacho's earlier request to waive his right to a jury trial. The court asked whether there was a signed waiver of jury trial. Camacho explained, "Yes, your Honor. I want a bench trial. I have the paper with waiver of jury trial in my [cell]. I'm sorry I didn't bring it here today, but, yes, I want a bench trial. I do not want a jury trial." Report of Proceedings (RP) (Sept. 25, 2019) at 9. The trial court treated this oral request as a sufficient waiver. Camacho never entered the written waiver.

The matter proceeded to a bench trial. Primarily based on store surveillance video showing the altercation in the parking lot, Judge Joseph Burrowes found that Camacho, without provocation, brandished a knife and took several stabs toward the victim, who feared for his life.

At sentencing, Camacho asked to be sentenced "under diminished capacity . . . because [of his] mental health" and because he was "'forced to defend'" himself. RP (Oct. 18, 2019) at 39, 41. In announcing the sentence, Judge Burrowes expressed relief that no one was stabbed. He also said there were "no mitigating factors that I can see by you, sir." RP (Oct. 18, 2019) at 43. The court imposed a top of the standard range sentence of 96 months, which included the 12-month deadly weapon enhancement.

3

Camacho timely appealed.

## ANALYSIS

WAIVER OF RIGHT TO JURY TRIAL

Camacho contends the trial court erred by failing to ensure that his oral waiver of his right to a jury trial was knowing and intelligent. He contends the law requires a colloquy between the court and the defendant, and no colloquy occurred here. The State disagrees, but urges us to not review this purported error. We agree with the State that Camacho is barred from asserting this purported error on appeal.

The "invited error doctrine" precludes a criminal defendant from appealing an error that he helped create. *State v. Mercado*, 181 Wn. App. 624, 629-30, 326 P.3d 154 (2014). The doctrine bars a defendant from setting up an error and then appealing over it. *Id.* at 630. "To determine whether the invited error doctrine is applicable to a case, we may consider whether the [defendant] affirmatively assented to the error, materially contributed to it, or benefited from it." *Id.* In other words, the defendant must materially and voluntarily contribute to the error appealed. *Id.* The State bears the burden of proof that an error is invited. *Id.*

Here, Camacho understood that one purpose of the continued pretrial hearing was for him to present and file the jury trial waiver form. When asked if he had the form,

Camacho apologized for leaving it in his cell, but reaffirmed his earlier request for a

bench trial. Camacho materially contributed to the error by leaving the jury waiver form

in his cell and not filing it. Had Camacho brought the form to the pretrial hearing and

filed it, his jury trial waiver would have been sufficient under CrR 6.1(a).

The State additionally argues review is precluded because the error asserted is not

a manifest error affecting a constitutional right. We agree.

Generally, this court does not review an issue raised for the first time on appeal.

RAP 2.5(a). There are exceptions to this, including where the error claimed is a manifest

error of constitutional magnitude. RAP 2.5(a)(3). One component of "manifest" error

requires that it be so obvious that the error warrants appellate review. *State v. O'Hara*,

167 Wn.2d 91, 99-100, 217 P.3d 756 (2009).

To be effective, a waiver of the jury trial right must be knowing, intelligent, and

voluntary. *State v. Castillo-Murcia*, 188 Wn. App. 539, 547, 354 P.3d 932 (2015).

"Appellate courts do not presume the defendant waived his right to a jury trial unless

there is 'an adequate record showing that the waiver occurred.'" *Id.* (quoting *State v.*

*Pierce*, 134 Wn. App. 763, 771, 142 P.3d 610 (2006)). "Because Washington requires

only a personal expression of waiver from the defendant, the right to a jury trial is easier

to waive than other constitutional rights." *Id.*

There is no obvious error because the record strongly suggests that Camacho made a knowing, intelligent, and voluntary waiver of his jury trial right. With respect to knowing, Camacho purposefully waived his jury trial right twice in open court. With respect to intelligent, Camacho was previously advised of his jury trial right at arraignment, expressed no misunderstanding of that right, and had extensive experience as a felony defendant in superior court. With respect to voluntary, Camacho *himself* waived his jury trial right. Given the record, the purported error is not so obvious to warrant appellate review.

We now address three points raised by our dissenting colleague:

*Shifting burden of proof*

The dissent asserts we are placing "the burden of disproving a waiver on Martiniano Camacho." Dissent at 6-7. Not so. We have chosen to not reach the issue of jury waiver. Our choice might be different if there was a colorable argument that Camacho lacked the capacity to understand his constitutional right to a jury trial. But there is no colorable argument. The record establishes that Camacho had sufficient capacity. He was taking appropriate medication for his attention deficit disorder and advised one judge that he had previously been found competent. After asking Camacho about his experience and capabilities of trying his own case, the judge found that

6

Camacho knowingly, intelligently, and voluntarily waived his right to an attorney. Because Camacho had the experience and capability to try his own case, he certainly had the capacity to waive his right to a jury trial.

*Inferring, implying, or imputing waiver*

The dissent asserts we are inferring, implying, or imputing to Camacho that he waived his right to a jury "based on his actions." Dissent at 7. This also is not so. We have chosen not to reach the issue of jury waiver, in part, because the record establishes that Camacho *himself* twice told the trial court he wanted to waive his right to a jury and to have a bench trial. We have not inferred, implied, or imputed anything.

*State v. Wicke*, 91 Wn.2d 638, 591 P.2d 452 (1979) is instructive. There, Wicke appealed his driving while intoxicated (DWI) conviction from district court to superior court. *Id.* at 641. Under the rules at the time, his appeal was de novo and he had a right to a new trial. *Id.* Once in superior court, defense counsel advised the trial court, with Wicke at his side, that his client was waiving his right to a jury trial. *Id.* The trial court did not question Wicke if he had discussed the waiver of this right with counsel or if he agreed with what his counsel said. *Id.* Wicke was again found guilty. *Id.* On appeal, Wicke asserted for the first time that his trial counsel's oral waiver of his jury right did

7

not comply with CrR 6.1(a). *Id.* The Court of Appeals agreed and reversed. The Supreme Court accepted review.

Before reaching the issue of waiver, our high court wrote: "Under most circumstances, we are simply unwilling to permit a defendant to go to trial before a trier of fact acceptable to him, speculate on the outcome and after receiving an adverse result, claim error for the first time on appeal which, assuming it exists, could have been cured or otherwise ameliorated by the trial court." *Id.* at 642-43. Nevertheless, the court addressed the issue "because the present record is inadequate under current United States Supreme Court standards to demonstrate a valid waiver of the constitutional right to a jury trial." *Id.* at 644. The court noted that every reasonable presumption should be indulged against waiver. *Id.* at 645. And because the right to a jury was personal to Wicke and because Wicke had not personally assented to the waiver, the sufficiency of Wicke's waiver "may be questioned." *Id.* at 644. The court concluded: "Because this is an uncomplicated DWI case, rather than remanding for a reference hearing to determine if a sufficient standard of proof might be forthcoming to establish a valid jury waiver, the practical disposition is to concur with the Court of Appeals and remand for a new trial." *Id.* at 645.

We distinguish *Wicke*. There, the record was inadequate to establish that Wicke personally waived his jury trial right. Here, the record is adequate. Camacho personally waived his jury trial right twice in open court.

If the record was inadequate to establish a sufficient waiver, we would remand under RAP 9.11[1] rather than grant Camacho a new trial. As opposed to an uncomplicated DWI case, Camacho's prosecution involves a second degree assault case with multiple witnesses.

*Destroying the principle of a trial court finding*

The dissent asserts, by denying review of the substantive issue, we are "destroy[ing] the principle that the trial court must find the waiver to be voluntary, knowing, and intelligent." Dissent at 10. We disagree.

Our decision to not review the issue is based on the unique facts of this case that reflect invited error. Here, Camacho left the jury waiver form in his cell. Had he remembered the form, it would have been entered in the record and this issue would not have arisen.

---

[1] For example, we would direct the trial court to consider the existing record, the contents of its standard 2019 jury waiver form, and perhaps even Camacho's previous felony judgments that might reflect his past experience of jury and bench trials. And based on all this, enter findings on whether Camacho's waiver of his jury right was knowing, intelligent, and voluntary.

9

Our decision could also be based on other facts, facts that show the purported constitutional error was not manifest. As discussed above, the record strongly suggests that Camacho made a knowing, intelligent, and voluntary waiver of his jury trial right.

Sometimes the purported error will be manifest. In those situations, the substantive issue will be addressed and an appellate court will have to determine whether to affirm, remand for findings, or reverse for a new trial. This is not one of those situations.

TRIAL COURT'S CONSIDERATION OF EXCEPTIONAL SENTENCE

Camacho contends the trial court abused its discretion by failing to meaningfully consider his request for an exceptional sentence downward. He argues the trial court did not consider the failed defense of self-defense or his argument that his capacity was impaired. We disagree.

Defendants are not entitled to an exceptional sentence below the standard range. *State v. Grayson*, 154 Wn.2d 333, 342, 111 P.3d 1183 (2005). However, they are entitled to request the court to consider such a sentence and to have that request meaningfully considered. *Id.* A trial court abuses its discretion when it categorically refuses to consider or impose an exceptional sentence below the standard sentence range for any reason. *Id.*

Camacho asserts two bases for an exceptional sentence downward: (1) the failed

defense of self-defense and (2) his impaired ability to understand the wrongness of his

actions.

*No evidence of failed self-defense*

Some defenses can be insufficiently proved at trial but nevertheless permit a trial

court to impose an exceptional sentence downward. *See State v. Hutsell*, 120 Wn.2d 913,

921, 845 P.2d 1325 (1993). Camacho contends the trial court found evidence of self-

defense, although legally insufficient to find him not guilty. The evidence he points to is

a purported finding by the trial court that he dropped the knife before chasing the victim.

This misconstrues the trial court's findings.

The trial court found that Camacho's claim he dropped the knife was not credible.

Instead, based on witness testimony and the surveillance video, the trial court found that

Camacho chased the victim while brandishing the knife. Because the trial court did not

find any credible evidence of self-defense, a failed self-defense did not provide a basis to

impose an exceptional sentence downward.

*No evidence mental health contributed to the assault*

RCW 9.94A.535(l)(e) permits a court to impose an exceptional sentence

downward if "[t]he defendant's capacity to appreciate the wrongfulness of his or her

conduct, or to conform his or her conduct to the requirements of the law, was significantly impaired. Voluntary use of drugs or alcohol is excluded."

The trial court did not find that Camacho's capacity to commit the assault was diminished by a mental health condition. Rather, it found that Camacho "appeared to be under the influence of methamphetamine at the time of the incident." Clerk's Papers at 43.

In summary, the trial court did consider Camacho's request for a mitigated sentence below the standard range. In rejecting it, the court determined there was no factual basis for it. The trial court's written findings support this determination.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW (SAG)

SAG I: SELF-DEFENSE

Camacho reargues that he acted in self-defense. However, the trial court is the finder of facts. It found that Camacho was not a credible witness. This court will not review issues of witness credibility. We defer to the finder of fact, who is in the best position to make such determinations. *In re Estate of Barnes*, 185 Wn.2d 1, 9, 367 P.3d 580 (2016).

No. 37143-3-III
*State v. Camacho*

SAG II: FORM OF QUESTIONING

During Camacho's cross-examination of the victim, he tried to read into the record the entire transcript of the victim's police interview. The trial court sustained the State's objection. In doing so, Camacho contends the trial court erred. We disagree.

A witness may be questioned on cross-examination about a prior inconsistent statement. ER 613. This rule does not permit a transcribed interview to be admitted. The transcribed interview is hearsay, i.e., an out-of-court statement offered in court to prove the truth of the matter asserted. ER 801(c).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_Lawrence-Berrey_
Lawrence-Berrey, J.

I CONCUR:

_Korsmo, JPT_
Korsmo, J.P.T.[2]

---

[2] Judge Kevin M. Korsmo was a member of the Court of Appeals at the time argument was held on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.

13

No. 37143-3-III

FEARING, J. (dissent) — The trial court record fails to establish that Martiniano Camacho voluntarily and intelligently waived the right to a jury trial, not because of any fault of the prosecution or error by the superior court judges, but because of circumstantial error. Despite the constitutional error, the majority rules that Camacho cannot assert the violation of his right to a jury because he invited the error. The majority also denies review because Camacho did not assert his right to a jury trial below and any error is not manifest constitutional error. The majority's employment of the invited error rule and rejection of manifest constitutional error principle destroys the requirement that the trial court confirm that a waiver of the fundamental right to a jury be voluntary, knowing, and intelligent. I therefore dissent.

PROCEDURE

On August 1, 2019, the trial court arraigned Martiniano Camacho on charges of second degree assault. The superior court judge listed Camacho's constitutional rights, including his right to an impartial jury in his home county. The judge then asked Camacho if he had any questions about the rights read to him. Camacho responded that

he had questions. Instead of asking questions about his rights, however, Camacho insisted on his innocence and demanded to see a video of store surveillance. During the colloquy with the court, Camacho repeatedly interrupted the judge's comments. Camacho never indicated that he understood his constitutional rights, let alone his right to a jury.

On August 28, 2019, Martiniano Camacho appeared before a second superior court judge for purposes of an omnibus hearing. The hearing did not address whether Camacho would prefer a jury or bench trial.

On September 4, 2019, Martiniano Camacho appeared before a third superior court judge. Camacho complained about the performance of his assigned counsel and requested that he represent himself. After a colloquy with the court, Camacho agreed to postpone a decision to represent himself.

On September 18, 2019, Martiniano Camacho appeared before the same judge who conducted the hearing on September 4. During the pretrial hearing, Camacho complained about his appointed counsel's supposed refusal to spend time with him and to answer his questions. Camacho insisted that, if only his counsel would speak to the prosecutor and explain the inconsistencies in the prosecution's case, the State would dismiss the charges. Apparently, counsel did not share Camacho's optimism. Camacho asked to represent himself.

During the September 18 hearing, the third superior court judge conducted a thorough colloquy with Martiniano Camacho to determine Camacho's competency to

2

represent himself. At the beginning of the colloquy, Camacho repeated his habit of interrupting the judge when the judge spoke. Camacho indicated that he had been in the justice system since the age of 13 and that the third judge had prosecuted him as a juvenile. Camacho disclosed that he suffered from attention deficit disorder, but he claimed that medications controlled the disorder. After the detailed questioning of Camacho, the court found Camacho to have knowingly, voluntarily, and intelligently waived the right to representation by counsel.

During the September 18 pretrial hearing and after authorizing Martiniano Camacho to represent himself, the superior court judge scheduled a trial for September 30. Camacho then expressed a desire to subpoena an investigator, who had engaged in seductive movements during her questioning of him. The following colloquy then occurred between Camacho and the judge:

> THE DEFENDANT: Last but not least is this, Your Honor: I want to waive my jury—to a jury trial.
> THE COURT: Okay. Is there a form that we—
> THE DEFENDANT: I want bench.
> THE COURT: Is that it? That's just a handwritten one?
> MR. VANDER SYS [standby defense counsel]: Yeah.
> THE COURT: I think we have a specific form, Mr. Camacho, that we use for purposes of making sure that a person is properly advised of their rights with regards to making that choice.
> THE DEFENDANT: Your Honor—were you done?
> THE COURT: Yes. But I don't want to hear further as far as your motion for a subpoena of the—
> THE DEFENDANT: That's—you're telling me I have to do that through paperwork?
>  . . . .
> THE COURT: This matter—I'm going to continue it for—if we could just reset it, I'm going to reset it one week—

3

> THE DEFENDANT: Thank you, Your Honor.
> THE COURT:—to the [September] 25th for purposes of any motions you want to file, Mr. Camacho, as well as to address—at that point in time you are to be provided with the standard form for a waiver of counsel. And you can submit that at that time—not waiver of counsel—a waiver of [jury] trial.

Report of Proceedings (RP) (Sept. 18, 2019) at 27-30.

A fourth superior court judge presided over the September 25 hearing. The court signed an order allowing Martiniano Camacho to represent himself. Camacho then complained about his standby counsel and requested a different one. The court denied the request. The following colloquy between the superior court judge and Camacho then ensued:

> THE COURT: Is there a waiver of jury trial in this case?
> MR. CAMACHO: Yes, your Honor. I want a bench trial. I have the paper with waiver of jury trial in my room. I'm sorry I didn't bring it here today, but, yes, I want a bench trial. I do not want a jury trial.
> THE COURT: Thank you.

RP (Sept. 25, 2019) at 9. The trial court, standby counsel, and Camacho then discussed trial concerns. Contrary to the majority opinion's conclusion, the record does not establish that the trial court treated any oral request or any comments by Martiniano Camacho about a form being in his jail cell to be a sufficient jury waiver. For all we know, the court expected that Camacho would file his written waiver before the beginning of trial. The record does not indicate whether Martiniano Camacho read or signed the waiver of jury form purportedly located in his jail cell. Nor does the record disclose the language in the waiver of jury form.

4

A bench trial proceeded on September 30, 2019 before a fifth superior court judge. The trial court did not then address any waiver of a jury trial. The record on review contains no written jury trial waiver. The record on review lacks any questioning of Martiniano Camacho by a superior court judge about whether Camacho knowingly, voluntarily, and intelligently waived his constitutional right to a jury trial. The record lacks any finding that Camacho voluntarily, knowingly, and intelligently waived his constitutional right.

## LAW AND ANALYSIS

### Jury Trial Right

United States Constitution Amendment 6 and Washington Constitution, article I, sections 21 and 22 grant an accused the right to a jury trial. *Duncan v. Louisiana*, 391 U.S. 145, 154, 88 S. Ct. 1444, 20 L. Ed. 2d 491 (1968); *State v. Pierce*, 134 Wn. App. 763, 770, 142 P.3d 610 (2006). Washington Constitution, article I, section 21 reads:

> The right of trial by jury shall remain inviolate. . . .

Washington Constitution, article I, section 21 declares:

> In criminal prosecutions the accused shall have the right to . . . have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed. . . .

A jury trial is "fundamental to the American scheme of justice." *Ramos v. Louisiana*, ___ U.S. ___, 140 S. Ct. 1390, 1397, 206 L. Ed. 2d 583 (2020). There is no more fundamental right in the United States than the right to a jury trial. *State v. Larraco*, 32 Kan. App. 2d 996, 999, 93 P.3d 725 (2004).

5

A Washington statute and court rule also addresses an accused's waiver of a jury trial. RCW 10.01.060 declares, in pertinent part:

> That except in capital cases, where the person informed against or indicted for a crime is represented by counsel, such person may, *with the assent of the court*, waive trial by jury and submit to trial by the court.

None of the five superior court judges reviewing Martiniano Camacho's prosecution assented to any waiver by Camacho. CrR 6.1(a) declares:

> **Trial by Jury.** Cases required to be tried by jury shall be so tried unless the defendant files a written waiver of a jury trial, and has consent of the court.

Martiniano Camacho filed no signed written waiver, and again no superior court judge consented to a waiver. A court cannot intelligently consent to acceptance of a waiver without questioning the accused as to whether he voluntarily, knowingly, and intelligently wishes to forego his right.

## Waiver of Jury

The constitutional right to a jury trial, like other constitutional rights, may be waived. *State v. Forza*, 70 Wn.2d 69, 70, 422 P.2d 475 (1966); *State v. Brand*, 55 Wn. App. 780, 785, 780 P.2d 894 (1989). Nevertheless, the waiver of a constitutional right, including the right to a jury, must be made knowingly, voluntarily, and intelligently. *State v. Thomas*, 128 Wn.2d 553, 558, 910 P.2d 475 (1996); *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207, 691 P.2d 957 (1984). Courts indulge every reasonable presumption against waiver of fundamental rights and against the validity of a jury waiver. *Glasser v. United States*, 315 U.S. 60, 70, 62 S. Ct. 457, 86 L. Ed. 680 (1942); *City of Bellevue v.*

*Acrey*, 103 Wn.2d 203, 207; *State v. Griffith*, 11 Wn. App. 2d 661, 687, 455 P.3d 152 (2019). The State bears the burden of establishing a valid waiver. *State v. Wicke*, 91 Wn.2d 638, 645, 591 P.2d 452 (1979). Contrary to these principles, this court's majority indulges a presumption in favor of waiver and places the burden of disproving a waiver on Martiniano Camacho.

CrR 6.1(a)'s requirement of a written waiver seeks to impress on the accused the gravity of the right relinquished and to provide the best evidence of a waiver. *State v. Downs*, 36 Wn. App. 143, 145 n.2, 672 P.2d 416 (1983). Despite CrR 6.1(a)'s use of the mandatory "shall," the Washington Supreme Court has permitted an oral waiver. *State v. Wicke*, 91 Wn.2d 638, 646 (1979). Still, for an oral waiver to be effective, the evidence must show the defendant voluntarily, knowingly, and intelligently waived the right. *State v. Wicke*, 91 Wn.2d at 646.

If the defendant presents a written waiver, the trial court need not engage in an "extended colloquy" on the record to confirm the waiver. *State v. Brand*, 55 Wn. App. 780, 785 (1989). When the accused files no written waiver of a jury trial, a valid waiver requires some colloquy between the court and the defendant personally. *Boykin v. Alabama*, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); *State v. Williams*, 23 Wn. App. 694, 698, 598 P.2d 731 (1979). In *State v. Wicke*, 91 Wn.2d 638 (1979), a consolidation of two appeals, the trial court reversed a conviction in the one prosecution wherein the trial court did not engage in a colloquy, but affirmed a conviction in the

7

second prosecution wherein the trial court engaged in an extensive colloquy. In both appeals, the record lacked a written waiver.

A waiver of jury may not be inferred, implied, or imputed to the accused based on his actions. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 207 (1984); *City of Seattle v. Crumrine*, 98 Wn.2d 62, 65 653 P.2d 605 (1982). One reason for this rule is CrR 6.1(a)'s requirement of a written waiver. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 208. This court's majority also breaches this principle of law.

The law supports a briefer colloquy of the accused by the trial court before the court finds that the accused voluntarily, knowingly, and intelligently waived his right to a jury as opposed to when the accused seeks to represent himself. *State v. Castillo-Murcia*, 188 Wn. App. 539, 547, 354 P.3d 932 (2015); *State v. Brand*, 55 Wn. App. 780, 786 (1989). The rationale behind the stunted questioning for purposes of waiver of a jury is that the defendant may stand a better chance of acquittal with a judge in a prosecution wherein the accused possesses technical defenses. *State v. Brand*, 55 Wn. App. at 786-87. No one suggests that the charges against and defenses of Martiniano Camacho fit Camacho's benefiting from a bench trial. Regardless, no superior court judge questioned Camacho.

We do not know if Camacho understood that a unanimous vote of twelve people would be required to convict him during a jury trial, while a bench trial required only the vote of one person. Camacho may have believed a simple majority of twelve jurors could convict him. An accused's understanding of the difference between a bench and jury trial

8

implicates whether he knowingly and intelligently waived the right. *United States v. Cochran*, 770 F.2d 850, 853 (9th Cir. 1985); *United States v. Martin*, 704 F.2d 267, 274-75 (6th Cir. 1983); *United States v. Delgado*, 635 F.2d 889, 890 (7th Cir. 1981).

### Invited Error

My learned brethren ignore the lack of an enforceable waiver by ruling that invited error precludes review of the substantive question of waiver. The invited error doctrine precludes a criminal defendant from seeking appellate review of an error he helped create, even when the alleged error involves constitutional rights. *State v. Studd*, 137 Wn.2d 533, 546-47, 973 P.2d 1049 (1999); *State v. Mercado*, 181 Wn. App. 624, 629-30, 326 P.3d 154 (2014). The doctrine of invited error prohibits a party from setting up an error at trial and then complaining of it on appeal. *State v. Wakefield*, 130 Wn.2d 464, 475, 925 P.2d 183 (1996). To determine whether the invited error doctrine is applicable to a case, we may consider whether the petitioner affirmatively assented to the error, materially contributed to it, or benefited from it. *State v. Momah*, 167 Wn.2d 140, 154, 217 P.3d 321 (2009).

To be invited, the error must be the result of an affirmative, knowing, and voluntary act. *State v. Lucero*, 152 Wn. App. 287, 292, 217 P.3d 369 (2009), *rev'd on other grounds*, 168 Wn.2d 785, 230 P.3d 165 (2010); *State v. Mercado*, 181 Wn. App. 624, 630 (2014). The defendant must materially contribute to the error challenged on appeal by engaging in some type of affirmative action through which he knowingly and voluntarily sets up the error. *In re Personal Restraint of Call*, 144 Wn.2d 315, 328, 28

9

P.3d 709 (2001). The State bears the burden of proof on invited error. *State v. Thomas*, 150 Wn.2d 821, 844, 83 P.3d 970 (2004).

The majority rules that Martiniano Camacho invited error when he asked for a bench trial and informed the superior court that he left the waiver form in his jail cell. The majority omits that the record does not show that Camacho signed the waiver form, that the record does not disclose the language of any waiver form, and that the superior court never ruled that Camacho had waived the constitutional right to a jury. The first superior court judge informed Camacho of his right to a jury, but Camacho never responded that he understood the right. Camacho affirmatively asked for a bench trial. But the record lacks any detail about the extent to which Camacho knew of his right and thereby knowingly and intelligently waived the right and thereby invited any error.

The majority cites no case law, in which a court found that an accused invited error in the context of waiver of a jury trial. In all cases, in which the reviewing court upheld the waiver of the right, the trial court engaged in some form of colloquy with the accused. No such colloquy occurred with Martiniano Camacho. Under the majority's ruling, an accused simply by requesting a bench trial will forego the right to a jury without the court exploring and finding that the waiver of a jury was knowing, voluntary, and intelligent. This court's ruling on invited error thereby destroys the principle that the trial court must find the waiver to be voluntary, knowing, and intelligent.

The only foreign decision addressing whether the accused loses the right to a jury trial by invited error is *City of Wichita v. Bannon*, 37 Kan. App. 2d 522, 154 P.3d 1170

10

(2007). On appeal, the city claimed that Jeff Bannon invited error when his counsel wrongly informed the trial court that Bannon waived his jury right and Bannon remained silent while his counsel spoke. The court reversed the conviction because of the lack of a jury waiver. The court reasoned that application of invited error "was inconsistent with substantial justice" since defendant had not waived his right. The facts on Martiniano Camacho are disparate, but *City of Wichita v. Bannon* teaches us that invited error does not suit waiver of the jury right.

I recognize that courts hold an accused, who represents himself, to a standard of a licensed attorney. Nevertheless, Martiniano Camacho asked for a bench trial while representing himself. The record reflects no conversation between Camacho and any counsel about the important right to a jury before any invited error.

This court's majority may consider Martiniano Camacho's experience in the judicial system to be a factor favoring application of invited error. If so, this court engages in fact-finding, an activity unbecoming a reviewing court. The sentencing record establishes sixteen earlier felonies. Although we might conclude that Camacho had earlier been party to a jury trial, such would be speculation. Some of his charges could have been handled in juvenile court, where he had no right to a jury. He could have pled guilty without a trial in other prosecutions. In short, we do not know the extent to which he submitted his cases to juries in the past. Regardless, Camacho's conduct before the many judges before whom he appeared suggest a low intelligence and eagerness to

quickly resolve his prosecution. Anyway, without a written waiver, the law demanded

some colloquy between the court and Camacho. No colloquy occurred.

## Manifest Constitutional Error

The majority also concludes that Martiniano Camacho cannot raise his claim to an

invalid waiver for the first time on appeal. Nevertheless, a challenge that the jury trial

right was not waived is a manifest constitutional error that can be raised for the first time

on appeal. RAP 2.5(a)(3); *State v. Griffith*, 11 Wn. App. 2d 661 (2019); *State v.

Williams*, 23 Wn. App. 694, 695 (1979). In *State v. Hos*, 154 Wn. App. 238, 249-50, 225

P.3d 389 (2010), the State contended on appeal that the defendant could not raise the

issue of a valid waiver because she did not call attention to the error to the trial court.

With scant analysis, we rejected this contention.

The majority's view that an accused loses the right to assert as error on appeal an

invalid waiver of a jury, when the accused did not suggest to the trial court that his

waiver was invalid, would prevent the appeals court from almost always, if not always,

reviewing such a claim of error. In none of the appellate decisions addressing a waiver of

a jury did the defendant mention to the trial court a lack of a jury waiver or an insufficient

waiver. If the accused had brought the issue to the trial court's attention, any failure to

waive would have been corrected.

## Remedy

One dissenting judge in a Washington decision suggests that the remedy for a

failure of the trial court to determine whether the accused voluntarily, knowingly, and

12

intelligently waived a jury is to remand to the trial court to conduct a hearing on the question. *State v. Brand*, 55 Wn. App. 780, 793 (1989) (Winsor, dissenting). Most other decisions remand for a new trial, however. In *State v. Wicke*, 91 Wn.2d 638 (1979), the Washington Supreme Court remanded for a new trial because of the invalid waiver.

I would reverse and remand for a new trial. At the least, the prosecution of Martiniano Camacho should be remanded for a hearing on the voluntary, knowing, and intelligent nature of the jury waiver.

I DISSENT:

_____
Fearing, J.